**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-cv-2107 (TSC) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

In this Freedom of Information Act (FOIA) suit, Plaintiff Judicial Watch, Inc. seeks summaries of interviews the Federal Bureau of Investigation (FBI) conducted with Bruce Ohr, Director of the Department of Justice's (DOJ) Organized Crime Drug Enforcement Task Force. The FBI memorialized the interviews in documents referred to as FD-302s. The FBI initially denied Judicial Watch's requests for twelve FD-302s related to the Ohr interviews, but eventually released redacted versions pursuant to various FOIA exemptions. Judicial Watch challenges three of these exemptions.

Both sides have moved for summary judgment. For the reasons set forth below, the court will GRANT DOJ's Motion for Summary Judgement, (ECF No. 20), and DENY Judicial Watch's Cross-Motion for Summary Judgement. (ECF No. 23.)

## I.   BACKGROUND

Starting on November 22, 2016, the FBI interviewed Ohr as part of its investigation into possible Russian interference in the 2016 election. (ECF No. 20-3, Hardy Decl. ¶¶ 27, 12 n.3.)

1

On August 6, 2018, Judicial Watch submitted a FOIA request to the FBI seeking twelve of the FD-302s associated with Ohr.  (*Id.* Ex. A, at 26.)[1]

By letter dated March 15, 2019, the FBI informed Judicial Watch that the responsive records were being "withheld in [their] entirety . . . pursuant to subsections (b)(7)(A), (b)(1), (b)(3) [50.U.S.C. §3024 (i)(1)], (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E)" of FOIA.  (*Id.* Ex. C, at 32.)

Following the March 7, 2019 release of the Office of the Special Counsel's "Report on the Investigation into Russian Interference in the 2016 Presidential Election," the FBI informed Judicial Watch on August 8, 2019, that it would produce portions of the records sought in Judicial Watch's FOIA request.  (*Id.* Ex. D, at 35.)  The FBI ultimately released all twenty-one pages of the requested FD-302s to Judicial Watch with redactions made pursuant to FOIA Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E).  (*Id.*)

Judicial Watch challenges the DOJ's invocation of Exemptions 3, 7(D), and 7(E).  In support of its motion, the DOJ has submitted a declaration from David M. Hardy, the Section Chief of the Record/Information Dissemination Section in the Information Management Division of the FBI, explaining the FBI's basis for the exemptions.  (Hardy Decl. ¶ 1.)

## II.   LEGAL STANDARD

### A. <u>**Summary Judgment**</u>

Summary judgment is proper where the record shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298

---

[1] The page numbers cited in the Hardy declaration and the accompanying exhibits refer to the pagination assigned by the court's electronic filing system.

F.3d 989, 991 (D.C. Cir. 2002). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895. Courts must view "the evidence in the light most favorable to the non-movant[ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.– Islamic Rel. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

**B. FOIA**

Most FOIA cases are resolved on motions for summary judgment. *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). FOIA "was enacted to facilitate public access to Government documents" and "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Citizens for Resp. & Ethics in Wash. (CREW) v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). Under FOIA, a government agency, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person." *Id.* at 1087 (quoting 5 U.S.C. § 552(a)(3)(A)). Federal agencies must comply with requests and make their records available to the public unless such information falls within one of nine statutory exemptions. 5 U.S.C. §§ 552(a)–(b).

"The agency bears the burden of establishing that a claimed exemption applies." *CREW*, 746 F.3d at 1088 (citing *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749,

755 (1989)).  To meet this burden, the agency may rely on supporting declarations that are

reasonably detailed and non-conclusory.  *See King v. Dep't of Just.*, 830 F.2d 210, 218–19 (D.C.

Cir. 1987) ("[A]ffidavits cannot support summary judgment if they are conclusory, merely

reciting statutory standards, or if they are too vague or sweeping.").  "If an agency's affidavit

describes the justifications for withholding the information with specific detail, demonstrates that

the information withheld logically falls within the claimed exemption, and is not contradicted by

contrary evidence in the record or by evidence of the agency's bad faith," then the court may

enter summary judgment on the basis of the affidavit alone.  *ACLU v. Dep't of Def.*, 628 F.3d

612, 619 (D.C. Cir. 2011) (citations omitted).

### III.    DISCUSSION

#### A.  <u>Exemption 3—Intelligence Sources and Methods</u>

Relying on FOIA Exemption 3, DOJ made redactions to protect information pertaining to

intelligence sources and methods.  (Hardy Decl. ¶¶ 17–26.)

Exemption 3 permits agencies to withhold information if disclosure is prohibited by

another statute that either "requires that the matters be withheld from the public in such a manner

as to leave no discretion on the issue" or "establishes particular criteria from withholding or

refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A)(i)–(ii).  To qualify

as a withholding statute for purposes of FOIA Exemption 3, a statute "must, on its face, exempt

matters from disclosure."  *Reps. Comm. for Freedom of Press v. Dep't of Just.*, 816 F.2d 730,

735 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other*

*grounds*, 489 U.S. 749 (1989).

Here, the FBI relies on Section 102A(i)(1) of the National Security Act of 1947,

50 U.S.C. § 3024(i)(1), to withhold information on each requested FD-302.  It is well established

that Section 102A(i)(1) of the National Security Act—which expressly protects "intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1) "is a withholding statute for purposes of Exemption 3." *Brick v. Dep't of Just.*, 358 F. Supp. 3d 37, 47–48 (D.D.C. 2019) (citing *CIA v. Sims*, 471 U.S. 159, 167 (1985); *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015)). [2] An agency invoking Exemption 3 need only demonstrate that the withheld material "relates to intelligence sources and methods," *Larson v. Dep't of State*, 565 F.3d 857, 868–69 (D.C. Cir. 2009), or "can reasonably be expected to lead to unauthorized disclosure of" such material. *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980) (citation omitted). Accordingly, courts "consistently defer[] to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003). Whether Exemption 3 applies "depends less on the detailed factual contents of specific documents." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978). Rather, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Id.*

In his declaration, Hardy explains that the information redacted pursuant to Exemption 3 discusses targets of foreign intelligence or espionage investigations, human intelligence sources, human intelligence source symbols, detailed intelligence activities, and file numbers. (Hardy Decl. ¶¶ 18–26.) [3] It is not difficult to see how releasing such information could endanger national security or the efficacy and safety of intelligence operatives in the field. For instance,

---

[2] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). Following the reorganization of Title 50 of the U.S. Code, section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

[3] Judicial Watch does not challenge the redaction of source symbol numbers or file numbers. (*See* ECF No. 23, Pl. Br. at 4 n.2.)

5

Hardy explains that disclosing targets of foreign counterintelligence or detailed intelligence activities would "(a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time." (*Id.* ¶¶ 21, 24.)  Disclosure would hamper the agency's ability to conduct investigations by "present[ing] a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers." (*Id.* ¶ 20 n.6.)

These concerns—and the detail provided in the declaration—are sufficient to warrant withholding under Exemption 3.  *See, e.g.*, *Cable News Network, Inc. v. FBI (CNN)*, 384 F. Supp. 3d 19, 31 (D.D.C. 2019) (finding the FBI's claim that disclosure "would reveal whether the FBI used information from 'confidential intelligence sources' and the 'reliability of that information,' as well as the Bureau's possible reliance on particular intelligence methods to gather other material" adequate for redaction under Exemption 3); *McGehee v. Dep't of Just.*, 362 F. Supp. 3d 14, 20 (D.D.C. 2019) (finding the FBI's claims that withheld information would "reveal the actual intelligence activit[y]" or method utilized by the FBI against a specific target; "disclose the intelligence-gathering capabilities of the activities or methods"; and provide an assessment of the intelligence source penetration of a specific target during a specific period of time was adequate for the redaction of national security information under FOIA Exemption 1); *Dillon v. Dep't of Just.*, 102 F. Supp. 3d 272, 288 (D.D.C. 2015) (same).[4]

---

[4] The court notes that the agency's burden is higher for Exemption 1 than for Exemption 3.  *See CNN*, 384 F. Supp. 3d at 32 ("Although a showing of harm to national security is necessary to invoke the protection of Exemption 1, Exemption 3 includes no comparable element.").

Judicial Watch's chief objection is that Hardy's declaration fails to state what intelligence activity or methods would be revealed and does not clarify whether the human intelligence sources referred are knowingly cooperating with the FBI, which would subject them to potential retaliation from doing so. This argument ignores the low hurdle the FBI faces when relying on the National Security Act for Exemption 3, and the fact that the intelligence activity or methods are the kinds of information the FBI—and the National Security Act—seeks to protect.

Judicial Watch also argues that in cases where courts relied on justifications similar to those supplied by Hardy, more detail was provided. (*See* ECF No. 30, Pl. Reply at 3.) Again, the court is unpersuaded. While an agency may always provide more detail, the FBI has cleared the low bar of demonstrating that the redacted material is reasonably related to information protected under the National Security Act. *See Larson*, 565 F.3d at 863 (finding that an agency declaration describing "the importance for continuing intelligence operations of keeping intelligence source and methods classified and confidential" provided "reasonably specific detail" for withholding under Exemptions 1 and 3). Thus, the redacted information here has been properly withheld under Exemption 3.

**B. <u>Exemption 7</u>**

Judicial Watch next challenges DOJ's use of Exemptions 7(D) and 7(E). To withhold information under Exemption 7, DOJ must first demonstrate that the withheld information was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see also Pub. Emps. for Env't. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal."). Here, the FD-302s contain information relating to an investigation into

foreign criminal activities and foreign interference in an election, and were compiled for law enforcement purposes.

    1.  <u>Exemption 7(D)—Confidential Source Information</u>

Judicial Watch objects to the FBI's reliance on Exemption 7(D) to withhold the name of an individual whom the agency claims cooperated with and provided information during the investigation under an implied assurance of confidentiality.

Exemption 7(D) protects from disclosure information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). "[I]n the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation," any "information furnished by a confidential source" is exempt from disclosure. *Id.* An individual is considered a confidential source under Exemption 7(D) "if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Parker v. Dep't of Just.*, 934 F.2d 375, 378 (D.C. Cir. 1991) (citation omitted).

Here, Judicial Watch contends that the FBI has not provided any meaningful information to assess the FBI's assertion that the information was provided based on implied confidentiality. (Pl. Br. at 8.) "The Court may infer confidentiality only if 'the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes.'" *Sennett v. Dep't of Just.*, 39 F. Supp. 3d 72, 78–79 (D.D.C. 2014) (quoting *Dep't of Just. v. Landano*, 508 U.S. 165, 174 (1993)). To determine whether implied confidentiality exists, courts consider factors such as "the character of the crime . . . , the source's relation to the crime, whether the source received payment, and whether the

source has an ongoing relationship with a law enforcement agency and typically

communicates . . . under conditions which assure contact will not be noticed." *Roth v.*

*Dep't of Just.*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quoting *Landano*, 508 U.S. at 179)

(internal quotation marks omitted); s*ee also Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78,

100 (D.D.C. 2009) ("The nature of the crime investigated and informant's relationship to

it are the most important factors determining whether implied confidentiality exists.").

      The court agrees with the FBI that the source would not have provided the information

described absent an implied assurance of confidentiality.  Hardy explained that the source was

privy to "specific and singular information about the criminal activities under investigation by

the FBI" and revealing the information "could easily identify him/her to those familiar with the

events they recounted."  (Hardy Decl. ¶ 36.)  Since that information "related to possible violent

criminal acts, and a hostile foreign government's actions against the national security of the

United States," the FBI concluded that "this source could have reasonably feared violent reprisal

by those on whom they provided information . . . [and] potentially faced other types of reprisal

(economic reprisal, social exclusion, and/or general negative stigmatization of their character)

based on their cooperation with the FBI."  (*Id.*)  Given that the source was in a unique position to

provide information that would place them in the crossfire of two global superpowers, it is

difficult to imagine that they would have provided such information without an assurance of

confidentiality.  Thus, given the subject of the investigation, the court finds that under a totality

of the circumstances, the FBI's invocation of Exemption 7(D) was valid.

      Judicial Watch relies heavily on *Sennett* to advance its argument to the contrary, but that

case is inapposite.  In *Sennett*, the court found that the FBI was not entitled to rely on

Exemption 7(D) because the source at issue was "only tangentially related to some people" who

might have committed a crime. *Sennett*, 39 F. Supp. 3d at 80. Here, Hardy makes it clear that the withheld source had "specific and singular information about the criminal activities" at issue in the FBI's investigation. (See Hardy Decl. ¶ 36.) Furthermore, the crime in *Sennett* involved a protest and attendant acts of vandalism, which are distinguishable from an investigation into crimes allegedly committed by a foreign power to interfere in a U.S. election. *See Sennett*, 39 F. Supp. 3d at 79 (finding that the crime must "support[] an inference of confidentiality.").

Finally, Judicial Watch argues that the FBI should not be entitled to rely on Exemption 7(D) because Ohr's source and the information they provided were disclosed during Ohr's public testimony before Congress. (Pl. Br. at 10–11.) But it is unclear whether the identity of the source has actually been made public. Judicial Watch appears to assume the source is either Michael Steele or Glenn Simpson, but those individuals have already been disclosed in the FD-302s that were released. (*Id.*; Hardy Decl. Ex. D, at 40–59.) Thus, it appears that the source in question has not yet been revealed, which further supports the court's conclusion that the individual's identity should be protected.

Accordingly, the court is satisfied that the FBI has met its burden to rely on FOIA Exemption 7(D).

   2.  Exemption 7(E)—Law Enforcement Investigation Techniques and Procedures

Judicial Watch also challenges the FBI's use of Exemption 7(E) to withhold two types of information: the "collection/analysis of information" and the "investigative focus of specific investigations." (Pl. Br. at 12–13; Hardy Decl. ¶¶ 44–45.) The court need not reach the merits of this claim. Where the FBI has claimed Exemption 7(E), it has also invoked exemptions Judicial Watch does not challenge (such as Exemption 1 or Exemption 7(A)), or exemptions the

court has already found were properly invoked (such as Exemption 3 or Exemption 7(D)).  Thus, DOJ is entitled to summary judgment here as well.

Finally, Judicial Watch urges the court to conduct an in-camera review to determine whether the FBI's explanations for withholding are adequate.  The court declines to do so. Hardy's declaration is "sufficiently specific to place the challenged [information] within the exemption categories, and the plaintiffs d[o] not contest the contents of the withholdings or present any evidence contradicting the affidavits or suggest[] bad faith." *Larson*, 565 F.3d at 870 (explaining when in-camera review is appropriate).  The court is also mindful of the D.C. Circuit's instruction that in-camera inspections are considered a "last resort," particularly with regard to matters of national security.  *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977).  A court "should not resort to [in camera review] routinely on the theory that 'it can't hurt.'" *ACLU*, 628 F.3d at 626 (quoting *Larson*, 565 F.3d at 870).

## IV.   CONCLUSION

For the foregoing reasons, the government's motion for summary judgment will be GRANTED  and Plaintiff's cross-motion will be DENIED.   The court will issue an order accordingly.

Date: November 25, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge